1  CHRISTOPHER J. CANNON, State Bar No. 88034
   MATTHEW A. LAWS, State Bar No. 273697
2  Sugarman & Cannon
   737 Tehama Street, No. 3
3  San Francisco, CA 94103
   Telephone: 415-362-6252
4  Facsimile: 415-362-6431
   chris@sugarmanandcannon.com
5
   Attorneys for Defendant  WEILIN CHANG
6
   JULIA M. JAYNE, State Bar No. 202753
7  Jayne Law Group, P.C.
   483 9th Street, Suite 200
8  Oakland, CA 94607
   Telephone: 415-623-3600
9  Facsimile: 415-623-3605
   julia@jaynelawgroup.com
10
   Attorney for Defendant JONATHAN CHANG
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                        SAN JOSE DIVISION
14

15  UNITED STATES OF AMERICA,            | Case No. 16-cr-00047 EJD

16            Plaintiff,                 | **DEFENDANTS JONATHAN & WEILIN
                                         | CHANG'S MOTION TO SUPPRESS
17            vs.                        | MATERIALS SEIZED UNDER
                                         | OVERBROAD SEARCH WARRANT**
18  JONATHAN CHANG & WEILIN CHANG,

19            Defendants.

20                            **MOTION**

21

22      **PLEASE TAKE NOTICE** that on a date to be set by this Court, defendants Jonathan and

23  WEILIN CHANG, through counsel, Julia Jayne and Christopher J. Cannon, will and do hereby move to

24  suppress materials seized under an overbroad search warrant.  This motion is based on the Fourth

25  Amendment to the United States Constitution, the Federal Rules of Criminal Procedure, the entire record

26  in this action, this motion, the below memorandum of points and authorities, and such argument and

27  evidence as counsel may present prior to a decision in this matter.

28

1

TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   THE AUTHORIZATION TO SIEZE AND SEARCH ANY DIGITAL DEVICE IS JUST
      ONE EXAMPLE OF WHY THE WARRANT WAS OVERBROAD. ...........................1

III.  WHILE SOME CATEGORIES CONTAIN LANGUAGE SEEMING TO "LIMIT" THE
      SEIZURE AND SEARCH TO ITEMS USED TO FACILITATE A CRIME, THAT
      LANGUAGE IS INSUFFICIENT, AND NOT CONTAINED IN OTHER CATEGORIES
      AUTHORIZING THE SEARCH AND SEIZURE OF THE SAME CATEGORIES OF
      ITEMS.......................................................................................................................5

      A.    THE WARRANT FAILS TO DESCRIBE WHAT COULD BE SEIZED WITH
            PARTICULARITY...............................................................................................6

IV.   THE AFFIANT FAILED TO INFORM THE MAGISTRATE THAT THE CHANGS
      HAD CIVIL COUNSEL AND PORTIONS OF THE MATERIALS TO BE SEIZED
      WOULD BE PROTECTED BY ATTORNEY CLEINT PRIVILEDGE.....................10

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS JONATHAN & WEILIN CHANG'S MOTION TO SUPPRESS MATERIALS SEIZED UNDER
OVERBROAD SEARCH WARRANT
Case No. 16-cr-00047 EJD                                                                    2

1

TABLE OF AUTHORITIES

2

**Cases**                                                                                                   **Page(s)**

3

Aguilar v. Texas,
    378 U.S. 108 (1964)............................................................................................................12

4

5

Center Art Galleries Hawaii, Inc. v. United States,
    875 F.2d 747 (9th Cir. 1989) ............................................................................................7

6

Franks v. Delaware,
    438 U.S. 154 (1978)....................................................................................................11, 12

7

8

In re Grand Jury Subpoena,
    JK-15-029, 828 F.3d 1083 (9th Cir. 2016) ......................................................................4

9

10

Groh v. Ramirez,
    540 U.S. 551 (2004)......................................................................................................6, 10

11

12

Riley v. California,
    134 S. Ct. 2473 (2014)....................................................................................................3, 4

13

Riley v. California,
    573 U.S. 373 (2014)....................................................................................................2, 3, 4

14

15

United States v. Adjani,
    452 F.3d 1140 (9th Cir. 2006) ..........................................................................................8

16

United States v. Cardwell,
    680 F.2d 75 (9th Cir. 1982) ..............................................................................................7

17

18

United States v. Clark,
    31 F.3d 831 (9th Cir. 1994) ..............................................................................................7

19

20

United States v. Comprehensive Drug Testing, Inc.,
    621 F.3d 1162 (9th Cir. 2010) (en banc) ......................................................................5, 6

21

United States v. Cotterman,
    709 F.3d 952 (9th Cir. 2013) (en banc) ........................................................................3, 4

22

23

United States v. Crozier,
    777 F.2d 1376 (9th Cir. 1985) ..........................................................................................7

24

25

United States v. DeLeon,
    979 F.2d 761 (9th Cir. 1992) ..........................................................................................12

26

United States v. Dozier,
    844 F.2d 701 (9th Cir. 1988) ....................................................................................10, 12

27

28

DEFENDANTS JONATHAN & WEILIN CHANG'S MOTION TO SUPPRESS MATERIALS SEIZED UNDER
OVERBROAD SEARCH WARRANT
Case No. 16-cr-00047 EJD                                                  3

United States v. Galpin,
    720 F.3d 436 (2d Cir. 2013)......................................................................................................5

United States v. Holzman,
    871 F.2d 1496 (9th Cir. 1989) ..................................................................................................7

United States v. Kiser,
    716 F.2d 1268 (9th Cir. 1983) ................................................................................................12

United States v. Luk,
    859 F.2d 667 (9th Cir. 1988) ..................................................................................................10

United States v. Payton,
    573 F.3d 859 (9th Cir. 2009) ....................................................................................................4

United States v. Spilotro,
    800 F.2d 959 (9th Cir. 1986) ...............................................................................................7, 8

United States v. Stanert,
    762 F.2d 775 (9th Cir. 1980 ) ................................................................................................12

United States v. Tamura,
    694 F.2d 591 (9th Cir. 1982) ...........................................................................................4, 5, 6

United States v. Washington,
    782 F.2d 807 (9th Cir. 1986) ....................................................................................................7

United States v. Weber,
    923 F.2d 1338 (9th Cir. 1990) ................................................................................................10

**United States Constitution**

Fourth Amendment ........................................................................................................*passim*

**Statutes**

18 U.S.C. § 1341...................................................................................................................3, 7

## I.   INTRODUCTION

It is difficult to imagine a more grossly overbroad search warrant, than the warrant authorizing the search of "22215 Rae Lane, Cupertino, California 9501, White Cargo Trailer V.I.N. 4RACS10189K030206, and Storage Sheds."  Warrant attached as Exhibit A.  That warrant purportedly authorized the search and seizure of almost anything at the above described locations including: "Any equipment used to facilitate the transmission, creation, display, encoding or storage of digital data, including word processing equipment, modems, routers, switches, docking stations, monitors, printers, plotters, encryption devices and optical scanners;"  Id. at ¶ No. 2; and "All records, documents, and materials, including correspondence, related to any of the following individuals: Jonathan CHANG and Weilin CHANG." Id. at ¶ No. 10.  Because that warrant is so grossly overbroad, no reasonable law enforcement officer should have relied upon it.  All evidence seized during the execution of that warrant, and the fruits of that evidence, must be suppressed.  The warrant is particularly problematic because it led to the seizure of a host of attorney client privileged material that the affiant had reason to believe would be on the digital devices seized and searched.  Because the affiant neglected to tell the issuing magistrate that there was likely to be attorney client privileged material on the seized devices, the magistrate did not have the opportunity to limit the search.  Accordingly, all the materials seized and searched and the fruits of that seizure and search must be suppressed.

## II.   THE AUTHORIZATION TO SIEZE AND SEARCH ANY DIGITAL DEVICE IS JUST ONE EXAMPLE OF WHY THE WARRANT WAS OVERBROAD.

When discussing the search of one cell phone, a far less intrusive search than the one here involving all the digital devices at the family home, the Supreme Court noted in Riley v. California, 573 U.S. 373 (2014):

> Our cases have recognized that the Fourth Amendment was the founding generation's response to the reviled "general warrants" and "writs of assistance" of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity. Opposition to such searches was in fact one of the driving forces behind the Revolution itself.
> …
> "Modern cell phones [and digital devices] are not just another technological convenience.  With all they contain and all they may reveal, they hold for many Americans the privacies of life."

DEFENDANTS JONATHAN & WEILIN CHANG'S MOTION TO SUPPRESS MATERIALS SEIZED UNDER OVERBROAD SEARCH WARRANT
Case No. 16-cr-00047 EJD                                        1

1   Riley, 573 U.S. at 403 (internal quotations and citations omitted).  The fact that technology now allows

2   an individual to carry such information in his hand does not make the information any less worthy of the

3   protection for which the Founders fought.  Id.

4        Ignoring the clarion call of Riley, which emphasized the intrusiveness of digital searches, in this

5   case the government obtained a warrant without any limits, particularity, or specificity.  Because this

6   warrant was so grossly overbroad, no reasonable officer could rely upon it and all evidence seized under

7   the warrant, and the fruits of that evidence, must be suppressed.

8        The first category of items this overbroad warrant purported to authorize the government to seize

9   was: "Any computer, iPhone, iPod, hard drive or digital data storage medium used to facilitate violations

10  of Title 18 U.S.C. § 1341 (Mail Fraud), 1343 (Wire Fraud), 1956(a)(l) (Money Laundering), and 1956(h)

11  (Conspiracy to Commit Money Laundering)."  The second category of items the warrant purported to

12  authorize the government to seize was: "Any equipment used to facilitate the transmission, creation,

13  display, encoding or storage of digital data, including word processing equipment, modems, routers,

14  switches, docking stations, monitors, printers, plotters, encryption devices and optical scanners."  This

15  second category did not even contain the legally insufficient "limitation" "used to facilitate violations of

16  law" and authorized the seizure of any digital device in the family home.

17       As the Supreme Court recognized in Riley, the Fourth Amendment extends to information stored

18  digitally as well as in tangible papers and effects.  "The papers we create and maintain not only in

19  physical but also in digital form reflect our most private thoughts and activities."  United States v.

20  Cotterman, 709 F.3d 952, 957 (9th Cir. 2013) (en banc).  Indeed, because of their immense storage

21  capacity and increasing importance in daily tasks, computers, cell phones, and other digital devices hold

22  "a digital record of nearly every aspect of [users'] lives—from the mundane to the intimate."  Riley,

23  supra, 573 U.S. at 395.

24       Because of the wealth of private information digital devices contain, the Supreme Court and the

25  Ninth Circuit have emphasized that searches of personal electronic devices are different than searches in

26  the physical world, requiring special attention to constitutional limitations.  See Grand Jury Subpoena v.

27  Kitzhaber, 828 F.3d 1083, 1090 (9th Cir. 2016).  Searches of digital devices are even more intrusive than

28  searches of physical records and containers.  Digital searches are not analogous to those of physical

DEFENDANTS JONATHAN & WEILIN CHANG'S MOTION TO SUPPRESS MATERIALS SEIZED UNDER
OVERBROAD SEARCH WARRANT
Case No. 16-cr-00047 EJD                                                                    2

1    containers because digital devices have "immense storage capacity," so the "intrusion on privacy is not

2    physically limited in the same way when it comes to [digital devices]." Riley, 573 U.S. at 393.  Digital

3    devices have an "element of pervasiveness" in daily life; nearly everyone uses cell phones and computers

4    on a regular basis for a wide variety of purposes, and a single device will routinely contain many

5    different types of data unlikely to be stored in one place in the physical world. Id. at 395.  "Searches of

6    computers therefore often involve a degree of intrusiveness much greater in quantity, if not different in

7    kind, from searches of other containers." United States v. Payton, 573 F.3d 859, 862 (9th Cir. 2009).

8    The "uniquely sensitive nature of data on electronic devices" thus renders "an exhaustive exploratory

9    search more intrusive than with other forms of property." United States v. Cotterman, 709 F.3d 952, 966

10   (9th Cir. 2013); Riley at 395.

11           As early as 1982, the Ninth Circuit recognized that electronic storage might result in

12   intermingling of items described in a warrant and other material that the government had no probable

13   cause to seize. United States v. Tamura, 694 F.2d 591, 595-96 (9th Cir. 1982).  In Tamura, the

14   government obtained a warrant to seize evidence of payments received by the defendant from records

15   held by his employer. Id. at 594.  In order to find this evidence, however, agents needed to peruse a

16   lengthy printout of records, identify specific transactions, and obtain corresponding vouchers.  Rather

17   than pursuing that review onsite, the government seized the entire set of records and sorted through them

18   later. Id. at 595.

19           The Court held that this procedure violated the Fourth Amendment. Tamura at 595.  It noted that

20   "all items in a set of files may be inspected during a search, provided that sufficiently specific guidelines

21   for identifying the documents sought are provided in the search warrant and are followed by the officers

22   conducting the search." Id.  But "the wholesale seizure for later detailed examination of records not

23   described in a warrant is significantly more intrusive and has been characterized as 'the kind of

24   investigatory dragnet that the fourth amendment was designed to prevent.'" Id. (quoting United States v.

25   Abrams, 615 F.2d 541, 543 (1st Cir. 1980)).  To protect against "over seizure," the Court outlined a

26   protocol that would allow for offsite sorting and segregation of material not covered by the warrant. Id.

27   at 596 & n.3.

28           In the last 35 years, the problem of over seizure has gone from the "comparatively rare instance"

1   described in Tamura, 694 F.2d at 595, to "an inherent part of the electronic search process." United

2   States v. Comprehensive Drug Testing, Inc., ("CDT") 621 F.3d 1162, 1177 (9th Cir. 2010)(en banc).

3          Indeed, "almost every hard drive encountered by law enforcement will contain records that have

4   nothing to do with the investigation." Department of Justice, Searching and Seizing Computers and

5   Obtaining Evidence in Criminal Investigations 87 (2009). As a result, the government routinely applies

6   for and receives "two-stage search" warrants: first to physically seize a digital storage device and make a

7   complete digital copy or "image" of its contents, and then to analyze the copy using forensic software.

8   Id. at 76, 86-87.

9          In recognition of the problem with digital searches, this District has developed a "Protocol For

10  Searching Devices Or Media That Store Data Electronically." That protocol requires the government to

11  use reasonable efforts to return, delete, or destroy any data outside the scope of the warrant. Exhibit A,

12  page 9. While the attachment of that protocol to the warrant demonstrates that the affiant knew of the

13  necessity to limit overbroad searches, the broad description of the items to be seized in the warrant render

14  the limitations of the protocol meaningless because the warrant authorized the seizure and search of

15  everything and nothing was outside of the broad description of items to be seized.

16         As the Second Circuit noted in United States v. Galpin, 720 F.3d 436, 447 (2d Cir. 2013), and as

17  the Supreme Court noted in Riley, the risk of digital searches becoming too general "demands a

18  heightened sensitivity to the particularity requirement in the context of digital searches." There was no

19  such heightened sensitivity here. Instead the warrant led to an indiscriminate seizure and search of all

20  documents and materials related to Wei Lin and Jonathan Chang.

21         The Ninth Circuit's opinion in CDT is an instructive example of why digital searches demand

22  heightened sensitivity to the Fourth Amendment's requirements. In that case, government investigators

23  obtained a warrant for drug-testing records of ten Major League Baseball players. CDT, 621 F.3d at

24  1166-67. However, they seized electronic storage devices and copied a directory containing information

25  about hundreds of players, in addition to the ten mentioned in the warrant, and searched all of the files in

26  the directory, despite conditions in the warrant that precluded them from doing so. Id. at 1167-68.

27  Nevertheless, the government argued it had complied with the conditions in the warrant and the Ninth

28  Circuit's guidance in Tamura because Tamura permitted over seizure in certain circumstances. Id. at

1170.  The government contended that the information it possessed about players outside the search warrant was nonetheless "lawfully seized" and in "plain view," allowing it to be further retained, searched, and used in criminal investigations and prosecutions.  Id.

The CDT Court forcefully rejected this argument because it "would make a mockery of Tamura." Id. at 1171.  The Court called for "greater vigilance on the part of judicial officers" and reiterated that "the process of segregating electronic data that is seizeable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect." Id. at 1177. In a concurring opinion joined by four other judges, Judge Kozinski offered more specific guidance for how authorizing magistrates could impose ex ante search conditions to ensure digital searches remain tailored to evidence for which the government has probable cause. Id. at 1178 (Kozinski, J., concurring). These conditions include foreswearing reliance on the plain view doctrine, the use of an independent taint team, and use of a search protocol "designed to uncover only the information for which [the government] has probable cause." Id. at 1180.  All of these suggestions were ignored here.  The warrant let the government seize anything the agents decided to take.

This search was grossly unreasonable because it contained no limits and the magistrate was never told of the likelihood there would be attorney client privileged material on the digital devices sought to be seized and searched.

**III.  WHILE SOME CATEGORIES CONTAIN LANGUAGE SEEMING TO "LIMIT" THE SEIZURE AND SEARCH TO ITEMS USED TO FACILITATE A CRIME, THAT LANGUAGE IS INSUFFICIENT, AND NOT CONTAINED IN OTHER CATEGORIES AUTHORIZING THE SEARCH AND SEIZURE OF THE SAME CATEGORIES OF ITEMS.**

The Supreme Court has clearly stated that a search warrant for "'evidence of crime'" was "[s]o open-ended" in its description that it could "only be described as a general warrant." Groh v. Ramirez, 540 U.S. 551, 563 (2004)(citing United States v. Stefonek, 179 F.3d 1030, 1033 (7th Cir. 1999)).  The Ninth Circuit has also been particularly concerned with the use of overbroad warrants allowing general searches. *E.g.* United States v. Clark, 31 F.3d 831 (9th Cir. 1994); Center Art Galleries Hawaii, Inc. v. United States, 875 F.2d 747 (9th Cir. 1989); United States v. Holzman, 871 F.2d 1496 (9th Cir. 1989); United States v. Spilotro, 800 F.2d 959 (9th Cir. 1986); United States v. Washington, 782 F.2d 807, 819 (9th Cir. 1986); United States v. Crozier, 777 F.2d 1376, 1381, 1382 (9th Cir. 1985).  Therefore, the

1  Ninth Circuit has repeatedly emphasized that "limiting the search only to records that are evidence of the

2  violation of a certain statute is generally not enough." United States v. Cardwell, 680 F.2d 75, 78 (9th

3  Cir. 1982).

4       Accordingly, the language of Category One in the warrant here, purporting to limit the seizure to

5  items "used to facilitate violations of Title 18 U.S.C. § 1341 (Mail Fraud), 1343 (Wire Fraud), 1956(a)(l)

6  (Money Laundering), and l 956(h) Conspiracy to Commit Money Laundering)," is insufficient because it

7  gives no way for the search team to distinguish which particular items were used to facilitate the various

8  crimes alleged, and which items were exempt from seizure.  Moreover, Category Two, which covers all

9  digital devices, contains no limiting language whatsoever.

10      As indicated above, Category Two purportedly authorizes the seizure of: "Any equipment used to

11 facilitate the transmission, creation, display, encoding or storage of digital data, including word

12 processing equipment, modems, routers, switches, docking stations, monitors, printers, plotters,

13 encryption devices and optical scanners." Category 10 purportedly authorizes the seizure of "All records,

14 documents, and materials, including correspondence, related to any of the following individuals:

15 Jonathan CHANG and Weilin CHANG."  These two categories cover all items likely to be found in a

16 home, including private correspondence, religious material, medical records, personal and family data,

17 genetic information, and anything else connected to Jonathan and Weilin Chang.  Defense counsel may

18 have a limited imagination, but we cannot determine what evidence found in a home could not be

19 shoehorned into these expansive categories. Because the authorization to search is so broad, no

20 reasonable officer could rely upon and the seized evidence and the fruits of that evidence must be

21 suppressed.

22

23 **A.  THE WARRANT FAILS TO DESCRIBE WHAT COULD BE SEIZED WITH
     PARTICULARITY**

24      In determining whether a warrant is sufficiently particular, courts should consider one or more of

25 the following factors: "(1) whether probable cause exists to seize all items of a particular type described

26 in the warrant; (2) whether the warrant sets out objective standards by which executing officers can

27 differentiate items subject to seizure from those which are not; and (3) whether the government was able

28 to describe the items more particularly in light of the information available to it at the time the warrant

DEFENDANTS JONATHAN & WEILIN CHANG'S MOTION TO SUPPRESS MATERIALS SEIZED UNDER
OVERBROAD SEARCH WARRANT

1   was issued." United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986)(internal citations omitted);

2   United States v. Adjani, 452 F.3d 1140, 1148 (9th Cir. 2006).

3         None of these factors are present here.  (1) There was not probable cause to seize everything in all

4   of the broad categories listed in the warrant.  (2) The warrant did not even begin to set out any standards

5   to separate things subject to seizure from items not subject to seizure, instead the warrant simply

6   authorized the seizure of all items in broad categories; and (3) it would have been easy to limit the search

7   to particular documents relating to financial transactions with the church, people or properties, yet none

8   of these limitations were included in the broad categories of warrant.

9         Instead, the warrant simply authored the seizure of:

10        2. Any equipment used to facilitate the transmission, creation, display, encoding or
             storage of digital data, including word processing equipment, modems, routers,
11           switches, docking stations, monitors, printers, plotters, encryption devices and
             optical scanners;
12        3. Any digital device capable of being used to commit, further or store evidence of
             the offenses listed above;
13        4. Any documentation, operating logs and reference manuals regarding the operations
             of the digital device or software used in the digital device;
14        5. Any applications, utility programs, compilers, interpreters and other software used
             to facilitate direct or indirect communication with the digital device;
15        6. Any physical keys, encryption devices, dongles and similar physical items that are
             necessary to gain access to the digital device or data stored on the digital device;
16        7. Any passwords, password files, test keys, encryption codes or other information
             necessary to access the digital device or data stored on the digital device;
17
      The warrant goes on to authorize the seizure of:
18
          8. All records, documents, and materials, including correspondence, related to any of
19           the following companies and/or individuals: HOC Associates, Inc., HOC
             Associates, LLC, Home of Christ Christian Center, The 4th Home of Christ, Via
20           Technologies, Inc. (or any related entities), 83 Graphics, Inc., Panda Networks,
             Faith, Hope, and Love Foundation (or any related entities), T.C. Connection
21           Corporation, I Pilot, Inc, Jonathan and Weilin Chang Trust, Jonathan CHANG,
             Weilin CHANG, any as yet unidentified business entities under the control of
22           Jonathan and/or Weilin CHANG; [again there is no limitation on the documents to
             be seized]
23        9.  All records, documents, and materials, including correspondence, related to the
             solicitation and/or receipt of donations;
24        10. All records, documents, and materials, including correspondence, related to any of
             the following individuals: Jonathan CHANG and Weilin CHANG;
25        11. All travel records related to Jonathan CHANG and Weilin CHANG;
          12. Any and all financial records including bank statements, deposit or withdrawal
26           slips, canceled checks, wire transfer documentation, credit card statements,
             receipts, invoices, loan records, documents, and materials related to:·HOC
27           Associates, Inc., HOC Associates, LLC, Home of Christ Christian Center, The 4th
             Home of Christ, Via Technologies, Inc. (or any related entities), 83 Graphics,
28           Inc., Panda Networks, Faith, Hope and Love Foundation (or any related entities),

T.C. Connection Corporation, I Pilot, Inc, Jonathan and Weilin Chang Trust, Jonathan CHANG, Weilin CHANG, any as yet unidentified business entities under the control of Jonathan and/or Weilin CHANG;

13. Any documentation and/or work papers of audits or financial review performed on HOC Associates, Inc., HOC Associates LLC and/or Home of Christ Christian Center;

14. Any correspondence related to audits or financial review performed on HOC Associates, Inc., HOC Associates, LLC, and/or Home of Christ Christian Center;

15. Documentation, keys, and combinations related to storage facilities, including safety deposit boxes, where HOC Associates, Inc., HOC Associates LLC, Home of Christ Christian Center, T.C. Connection Corporation, I Pilot, Inc, Jonathan and Weilin Chang Trust, Jonathan CHANG, Weilin CHANG, any as yet unidentified business entities under the control of Jonathan and/or Weilin CHANG maintain, or control property;

16. All accounting records, including but limited to, general journals, cash receipts, cash disbursement journals, accounts receivable, accounts payable, financial statements, receipts and invoices, tax returns, work papers, incorporation documents, and business records relating to HOC Associates, Inc., HOC Associates, LLC, Home of Christ Christian Center, T.C. Connection Corporation, I Pilot, Inc, Jonathan and Weilin Chang Trust, Jonathan CHANG, Weilin CHANG, any has yet unidentified business entities under the control of Jonathan and/or Weilin CHANG maintain;

17. Records regarding real estate transactions by HOC Associates, Inc., HOC Associates LLC, Home of Christ Christian Center, T.C. Connection Corporation, I Pilot, Inc, Jonathan and Weilin Chang Trust, Jonathan CHANG, Weilin CHANG, any as yet unidentified business entities under the control of Jonathan and/or Weilin CHANG related to the purchase, sale, financing, re-financing, maintenance, repair, remodel, leasing and rental agreements and tenant files;

18. Records regarding identification of or identifications used by Jonathan CHANG and Weilin CHANG;

19. Records of corporations or business trade names used by Jonathan CHANG and Weilin CHANG;

20. Articles of personal property tending to establish the identity of persons in control of the premises searched, including but not limited to utility bills and receipts, rent receipts, mail envelopes, identification and other items which establish personal identification;

21. Any documents related to civil actions and claims, and;

22. Any recordings of telephone conversations, conversations with donors or their representatives, conversations with Elders and/or members of The 4th Home of Christ Church regarding HOC Associates, Inc., HOC Associates, LLC, The Home of Christ Christian Center and/or TC Connection Corporation.
Warrant, Exhibit A.

This extensive list of documents and items to be seized looks like an abusive subpoena wish list in a civil action. The list purports to be a search warrant authorizing the seizure of particular items for which there is probable cause to believe that they may contain evidence of a crime. Instead, it is a drag net authorizing the seizure of "All records, documents, and materials, including correspondence, related to any of the following individuals: Jonathan CHANG and Weilin CHANG"; (Warrant Category 10, Exhibit A); and puts no limits on what can be seized.

DEFENDANTS JONATHAN & WEILIN CHANG'S MOTION TO SUPPRESS MATERIALS SEIZED UNDER OVERBROAD SEARCH WARRANT
Case No. 16-cr-00047 EJD                                                                                    8

1    An overbroad warrant may be so facially deficient that it may not be relied upon in good faith.

2    United States v. Weber, 923 F.2d 1338, 1346 (9th Cir. 1990); Center Art Gallery v. United States, 875

3    F.2d 747 (9th Cir. 1989); United States v. Luk, 859 F.2d 667, 677 (9th Cir. 1988); United States v.

4    Dozier, 844 F.2d 701, (9th Cir. 1988).

5    In Groh v. Ramirez, an agent submitted a detailed affidavit in an application for a warrant to

6    search a ranch.  Groh v. Ramirez, 540 U.S. 551, 554 (2004).  "Although the application particularly

7    described the place to be searched and the contraband petitioner expected to find, the warrant itself was

8    less specific."  Id.  The warrant did not incorporate by reference an itemized list contained in the

9    application and therefore the warrant failed to particularly describe the items to search for and seize.  Id.

10   at 554-555.  The agent who drafted the affidavit and secured the warrant then executed the search

11   warrant.  While conducting the search, the agent claimed he orally described the objects of the search to

12   the ranch owner and his wife, while the ranch owner and wife claimed the agent gave a more generic

13   description of "an explosive device in a box."  Id. at 555.  The agent left a copy of the search warrant but

14   did not leave a copy of the sealed application.  The following day, the agent faxed a copy of the page of

15   the application that listed the items to be seized to the ranch owners' attorney.  Id.  The ranch owners

16   sued the agent for violation of their civil rights.

17   The Court held that "the presumptive rule against warrantless searches applies with equal force to

18   searches whose only defect is a lack of particularity in the warrant."  Groh, 540 U.S. at 559.  Moreover,

19   the Court held that "it is incumbent on the officer executing a search warrant to ensure the search is

20   lawfully authorized and lawfully conducted."  Id. at 563.  The agent argued this standard "imposed a

21   novel proofreading requirement on officers executing warrants."  Id. at 563, fn 6.  The Supreme Court

22   disagreed: "That is not a duty to proofread; it is, rather, a duty to ensure that the warrant conforms to

23   constitutional requirements."  Id.

24   The Court held that the agent was not entitled to qualified immunity because "[t]he particularity

25   requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant

26   that plainly did not comply with that requirement was valid."  Id. at 563.  The Court noted that "the same

27   standard of objective reasonableness that we applied in the context of a suppression hearing in Leon

28   defines the qualified immunity accorded an officer."  Id. at 565, fn 8 (quoting Malley v. Briggs, 475 U.S.

335, 344).  Here, the warrant authorized the seizure of: "All records, documents, and materials, including correspondence, related to any of the following individuals: Jonathan CHANG and Weilin CHANG."  It is hard to imagine a broader description of the items to be seized.  What could be in Jonathan and Weilin Chang's home but not be related to Jonathan and Weilin Chang.  Because the warrant was ridiculously overbroad, no reasonable officer could rely upon it, and all evidence, and the fruits of the evidence seized and searched under the purported authorization of the warrant must be suppressed.

## IV.  THE AFFIANT FAILED TO INFORM THE MAGISTRATE THAT THE CHANGS HAD CIVIL COUNSEL AND PORTIONS OF THE MATERIALS TO BE SEIZED WOULD BE PROTECTED BY ATTORNEY CLEINT PRIVILEGE

The seizure and search here was not only extraordinarily broad, but it also intruded on attorney client privileged materials.  The existence of those privileged materials was known to the search warrant affiant, FBI agent Mark Matulich, but the Matulich did not disclose that fact to the issuing magistrate.

The affiant knew the Changs were represented by counsel and embroiled in civil litigation because James Cai, a party to the civil litigation, was emailing Matulich, material that Cai identified as having been produced in the litigation.  Email attached as Exhibit B (produced in this matter as CHANG-000409).  The affidavit, however, failed to disclose that James Cai was feeding Matulich information from the civil litigation and completely fails to mention that the digital devices were likely to contain privileged communications between the Changs and their civil counsel.

After the material was seized, Special Agent (SA) Christopher Reinke reviewed e-mails, text messages, notes, and photos on an Apple iPhone, evidence item number 1B21, seized during an October 8, 2015 search of 22215 Rae Lane, Cupertino, CA 95014."  Reinke 302, CHANG-001862 attached as Exhibit C.  There is nothing to indicate Reinke took any steps to limit that review.

The affiant's complete failure to disclose that the items sought to be seized included privileged material may be one of the things that led to the magistrate's issuance of this grossly overbroad warrant and that failure to disclose the existence of the known attorney client relationship at the minimum requires this Court to conduct a Franks hearing regarding why this vital information was not disclosed; and why the search was not limited to protect known attorney client information.

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held a defendant could challenge

1   the truthfulness of factual statements made in an affidavit supporting a search warrant.  If a defendant can

2   show that without the false statements the affidavit was insufficient to establish probable cause, all

3   evidence seized in reliance upon that affidavit must be suppressed.  Although the <u>Franks</u> affidavit

4   contained a "false statement", the reasoning of its holding has been extended to affidavits containing

5   material omissions.  <u>United States v. Stanert</u>, 762 F.2d 775, (9th Cir. 1980);  <u>United States v. Kiser</u>, 716

6   F.2d 1268 (9th Cir. 1983).  One of the primary purposes of the search warrant requirement is to remove

7   the determination of probable cause from those engaged in the often competitive enterprise of ferreting

8   out crime, and place it in the hands of a neutral and detached magistrate.  See <u>Aguilar v. Texas</u>, 378 U.S.

9   108 (1964).  When an agent fails to present the magistrate with all of the facts in the government's

10  possession, as happened here, then he usurps the function of the magistrate and acts with reckless

11  disregard for the truthfulness of the affidavit; he may not take shelter under the "good faith" exception

12  and the evidence must be excluded.  <u>United States v. DeLeon,</u> 979 F.2d 761, 763-64 (9th Cir. 1992);

13  <u>United States v. Dozier</u>, 844 F.2d 701, 705 (9th Cir. 1988).

14       Here, the affidavit authorized the search and seizure of all documents in the home of the two

15  people and did not limit the search in any way, despite knowing that the people were engaged in civil

16  litigation and their possessions likely contained attorney client privileged material.

17       Accordingly, all the evidence, and fruits of the evidence seized and searched under the overbroad

18  warrant must be suppressed.

19  Dated: May 28, 2019                    Respectfully submitted,

20                                              /s/
                                         Christopher J. Cannon
21                                       Matthew A. Laws
                                         Julia Jayne
22                                       Attorneys for JONATHAN & WEILIN CHANG

23

24

25

26

27

28

DEFENDANTS JONATHAN & WEILIN CHANG'S MOTION TO SUPPRESS MATERIALS SEIZED UNDER
OVERBROAD SEARCH WARRANT
Case No. 16-cr-00047 EJD                                                                  11