CHRISTOPHER J. CANNON, State Bar No. 88034
MATTHEW A. LAWS, State Bar No. 273697
Sugarman & Cannon
737 Tehama Street, No. 3
San Francisco, CA 94103
Telephone: 415-362-6252
Facsimile: 415-362-6431
chris@sugarmanandcannon.com

Attorneys for Defendant  WEILIN CHANG

JULIA M. JAYNE, State Bar No. 202753
Jayne Law Group, P.C.
483 9th Street, Suite 200
Oakland, CA 94607
Telephone: 415-623-3600
Facsimile: 415-623-3605
julia@jaynelawgroup.com

Attorney for Defendant JONATHAN CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN CHANG & WEILIN CHANG,<br><br>Defendants. | Case No. 16-cr-00047 EJD<br><br>**DEFENDANTS' JOINT MOTION FOR JUDGEMENT OF ACQUITTAL UNDER RULE 29**<br><br>Hearing Date:  August 23, 2019<br>Time:  1:30 p.m.<br>Dept:  Courtroom 1, 5th Floor<br>Judge:  Hon. Edward J. Davila |

**NOTICE OF MOTION AND MOTIONS**

**PLEASE TAKE NOTICE** that on August 23, 2019 or as soon thereafter as this motion may be heard, in the courtroom of the Honorable Edward J. Davila, United States District Court Judge, defendants Jonathan Chang and Weilin Chang, by and through counsel, will and do hereby  move this Court for an entry of a judgment of acquittal on Counts 1, 2, 3, 4, 5, 6, 7, 8, and 9. Mr. and Mrs. Chang bring this motion pursuant to Fed. R. Crim. P. 29(a) and the Fifth and Sixth Amendments to the United States Constitution.

The motion for judgment of acquittal is based on the grounds that the evidence, viewed in the light most favorable to the government, would not permit any rational trier of fact to conclude that Mr. and Mrs. Chang are guilty beyond a reasonable doubt of any of the charged offenses. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); United States v. Barker, 967 F.2d 1274, 1276 (9th Cir. 1991).

This motion is based upon the below memorandum of points and authorities, the files and records in the above-entitled case, and any and all matters that may be brought to the court's attention prior to or during the hearing on this motion.

Dated: August 27, 2019            Respectfully submitted,
                                  _____/s/_____
                                  Julia Jayne
                                  Christopher J. Cannon
                                  Matthew A. Laws
                                  Attorneys for JONATHAN & WEILIN CHANG

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court must grant a judgment of acquittal because the government failed to provide sufficient evidence for any rational trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The government has simply failed to produce evidence of any false statements made to either Cher Wang or HOC4 in order to induce either entity to give money to the Changs.

## II. THE LEGAL STANDARD FOR A RULE 29 MOTION

A motion for judgment of acquittal may be made after the government's case-in-chief, before submission to the jury, or after discharge of the jury. Fed. R. Crim. P. 29. The standard for determining whether to grant a Rule 29 motion is whether the evidence, viewed in the light most favorable to the government, would permit any rational trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Although circumstantial evidence alone can support a conviction, there are times that it amounts to only reasonable speculation and not to sufficient evidence." Newman v. Metrish, 543 F.3d 793, 796 (6th Cir. 2008); see also O'Laughlin v. O'Brien, 568 F.3d 287, 301 (1st Cir. 2009) (noting that there are "some limits" to the probative value of circumstantial evidence, and that a reviewing court should not give credence to evidentiary interpretations that are "unreasonable, insupportable, or overly speculative").

Where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt on each and every element of the charged offense, a judgment of acquittal is required. Id; see also United States v. Cassese, 290 F.Supp.2d 443 (S.D.N.Y. 2003) (granting motion for judgment of acquittal following a guilty verdict by the jury and after the court had twice before denied defendant's motions for judgment of acquittal). The law is clear that when the evidence equally supports an inference of innocence and of guilt, a reasonable jury must necessarily entertain a reasonable doubt. United States v. Delgado, 357 F.3d 1061, 1068 (9th Cir. 2004) (citations omitted); see also United States v. Glenn, 312 F.3d 58, 70 (2nd Cir. 2002) ("if the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then 'a reasonable jury must necessarily entertain a reasonable doubt'") (citation omitted);

United States v. Bishop, 959 F.2d 820, 831 (9th Cir. 1992) ("When a defendant's behavior is entirely consistent with innocence, the government must 'produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the defendant [in fact engaged in criminal conduct].") (citation omitted). The application of this principle is absolutely critical in this case because the inconclusive testimony of the government's witnesses, is simply insufficient to establish the elements of wire fraud because there is no evidence that Jonathan made any misrepresentation to obtain the donations.[1]

### III. THE COURT SHOULD GRANT THE MOTION FOR ACQUITTAL BECAUSE THE EVIDENCE IS INSUFFICIENT TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT

#### A. The Indictment

The Fifth and Sixth amendments allow a conviction only on the charges alleged in the Indictment. Despite the government's focus on taxes, foreign bank accounts, and conflict of interest, those are not the crimes charged in the indictment.

The Indictment alleges that Jonathan and Grace Chang "engaged in a scheme to defraud C.W. and HOC4 by utilizing HOCA to solicit donations and short-term loans from C.W., as well as obtain money and real property from C.W."  Indictment at ¶ 9, Doc. No. 1.  The Indictment does not allege any victims other than C.W. and HOC4.  The Indictment does not name CW's charitable foundations or associated companies as victims.  The substantive counts of wire fraud allege the wire transfers came from C.W.'s charitable foundation, but the source of the transfer, whether from Wells Fargo, Bank of Canton, or Bank of America, or any other source, is merely an allegation supporting the jurisdictional prerequisite, use of a wire communication.  The Indictment does not allege that entities associated with Cher Wang were defrauded.  The Indictment only alleges a fraud against Cher Wang, personally, and HOC4.

The heart of the scheme alleged in the Indictment is that Jonathan Chang and Grace Chang conspired to obtain funds from C.W. and HOC4 through a series of false representations.  See Paragraphs 12, 20, Indictment, Doc. No. 1.  The Indictment contains no allegations of fraud against C.W.'s charitable foundation or fraud against entities associated with Cher Wang.  Nor, as indicated above, does the Indictment allege tax fraud, failure to file FBAR's, or any other crime, except conspiracy to commit

---

[1] Because the same analysis applies to the two million donation, the three million dollar loan, the monthly donations and the special funds we will simply refer to all money received in what ever form as "donations."

DEFENDANTS' JOINT MOTION FOR JUDGEMENT OF ACQUITTAL UNDER RULE 29
Case No. 16-cr-00047 EJD                                                                                                            2

wire fraud, wire fraud, and laundering the proceeds of wire fraud.

The keys to the wire fraud charges are (1) the alleged false statements to induce the transfers, (2) a loss to HOC4 or Cher Wang, and (3) a transfer of the lost property to Grace and Jonathan Chang. The government has failed to introduce any evidence of the alleged false statements or loss from Cher Wang or HOC4.

**B. The "Proof" Regarding Cher Wang at Trial**

While there is ample evidence of transfers of funds, the government failed to produce ANY evidence that those transfers were caused by false representations.

1. <u>There is no evidence of a fraud against Cher Wang</u>.

The government's first witness, Cher Wang, testified that she did not remember many of the circumstances surrounding the donations. Even if she remembered those circumstances, and she testified that she did not, Ms. Wang twice acknowledged that once she makes a donation, she has no right to control the use of the funds.[2] Ms. Wang testified:

A. WELL, WHEN YOU DONATE IT TO CHURCH, IT'S REALLY DEPENDS ON
HOW CHURCH IS -- THEY WANT TO USE.

Again she confirmed she had no right to control the use of her donations, testifying:

IF YOU DONATE TO THE CHURCH, LIKE SUNDAYS, THAT'S REALLY DEPENDS
ON THE CHURCH NEED.

Or to put it more simply:

THEY HAVE THE RIGHT TO USE THE MONEY.

Accordingly, there could be no fraud against Ms. Wang because she testified that once the money was donated, she no longer had any control over its use.

The government will probably try to argue that while Ms. Wang acknowledged that once she donated the funds, she lost control of the funds, she was induced to make the donations through false representations. The problem with this argument is that Ms. Wang has no memory of why she made the donations.

---

[2] A charitable donation is not allowed where the taxpayer retained control over the purported gift. <u>Hanson v. Commissioner</u>, 820 F.2d 1464, 1468 (9th Cir. 1987).

DEFENDANTS' JOINT MOTION FOR JUDGEMENT OF ACQUITTAL UNDER RULE 29
Case No. 16-cr-00047 EJD                                                                                   3

When Cher Wang was asked:

Q. DID YOU EVER AUTHORIZE A DONATION FROM ONE OF YOUR COMPANIES THAT WOULD HAVE BEEN A PERSONAL DONATION?

Ms. Wang answered:

A.   I DON'T REMEMBER.

Her lack of memory regarding the donations was so certain that the government objected to the questioning about her donations as asked and answered

Again, when Ms. Wang was asked:

AND WOULD IT BE CORRECT TO SAY THAT IN APPROXIMATELY 2002, FAITH, HOPE AND LOVE TAIWAN BEGAN TO SEND MONEY ON A MONTHLY BASIS IN SUPPORT OF THESE SPECIAL PURPOSES WE'VE DISCUSSED?

A.   IT'S POSSIBLE. BUT I DON'T REMEMBER.

Cher Wang's lack of memory regarding the inducement of the donations is fatal to any governmental claim that those donations were fraudulently induced.  Therefore, Jonathan and Grace Chang may not be convicted of defrauding Cher Wang.

The government's speculative line of questioning regarding whether she would have donated if she knew the money would be used for property, cars, weddings, health care and club membership does not substitute for evidence regarding what Ms. Wang was told at the time of the donation, and what caused her to request that entities associated with her make those donations.  Moreover, the government's financial expert, Kikugawa, could not trace those expenditures to donor funds.  Jonathan Chang deposited significant sums of money into the LLC and Kikugawa admitted she did not distinguish which purchases were funded from personal funds and which were funded from donated funds.

Even if the government was able to trace donor funds to the purchase of properties, cars, weddings, health care and club memberships, and they were unable to do so, an irregular use of the funds obtained from donations is not evidence of wire fraud because a fraud is complete once the funds are obtained. United States v. Phillips, 704 F.3d 754, 763 (9th Cir. 2012).  There is no evidence to indicate that Jonathan and Grace Chang ever promised not to use the funds on property, cars, weddings, health care and club memberships.  The scheme alleged here, "to solicit donations and short-term loans from

C.W., as well as obtain money and real property from HOC4," would be complete once the donations were obtained.  The use of the donations was not part of the scheme alleged and may not be used to support a conviction for the scheme alleged in the Indictment, which does not mention properties[3], cars, health care and club memberships.

The evidence has shown that the donations were used for their intended purpose – the church property was purchased and HOCA Inc spent other money on church-related purposes.  There is ZERO evidence in the record that Cher Wang was fraudulently induced into parting with funds, but the evidence that is in the record shows Jonathan disclosed the role of HOCA.  Although Wang remembered very little about the specifics of the donations, she did have a recollection the property would be separately owned.

The facts in this matter are very similar to the fact pattern leading to a reversal, under a plain error standard, in United States v. Phillips, 704 F.3d 754 (9th Cir. 2012).  In Phillips, the Ninth Circuit reversed a wire fraud conviction because the subsequent acts used to support the jurisdictional prerequisite use of the mails were not part of the underlying scheme to defraud.

The Philips indictment, like the Indictment here, alleged a scheme to defraud and to obtain money from [the victim] by means of material false and fraudulent pretenses, representations and promises and the concealment of material facts.  After Phillips received the money, he used it to buy a watch through the mail.  Following United States v. Maze, 414 U.S. 395 (1974), the Ninth Circuit held that the watch purchase was not in furtherance of the scheme alleged and that Phillips "simply used the money he obtained from [the victim] to purchase a watch."

In Maze, the defendant used a stolen bank card to obtain food and lodging at motels, and those motels, with Maze's knowledge, mailed invoices for the goods and services that the defendant had received. The Maze Court assumed that the evidence supported a finding that Maze had caused the mails to be used, but found that the "more difficult question is whether these mailings were sufficiently closely related to [Maze's] scheme to bring his conduct within the statute." 414 U.S. at 399. Finding that the success of the defendant's scheme did not depend in any way on the mailings at issue, the Supreme Court reversed the conviction. Id. at 402.  Similarly, here, any alleged scheme by the Changs would have been complete when the money was received.  The use of the funds did not matter to the scheme.

---

[3] There is a mention of the properties in the forfeiture allegations, but not in the description of the scheme.

As the Ninth Circuit put it in <u>Phillips</u>, "as a result of Phillips's successful execution of his scheme to defraud, he had sufficient funds to pay for the watch. Therefore, even under the demanding plain error standard, Phillips's mail fraud conviction must be reversed." <u>Phillips</u>, 704 F.3d at 763.

Although we strenuously argue that there was no scheme to defraud here, if there was, as in <u>Phillips</u> and <u>Maze</u>, that scheme would have been complete upon receipt of the funds. Accordingly the allegedly irregular use of the funds cannot be used as evidence of a scheme to defraud, at best, if the government had proven a scheme to defraud, and it did not, any subsequent use of the funds would be a subsequent bad act, but not proof of the wire fraud alleged in the indictment.

The speculative line of inquiry the government engaged in with Ms. Wang assumes facts for which there is simply no evidence - that the defendants promised not to use the funds for properties, cars, weddings, and clubs.

Because there is simply no evidence of what representations were made to Ms. Wang to obtain the funds, there can be no finding of guilt on a false representation theory.

2. <u>The Indictment did not allege a fraud against entities associated with Cher Wang, it alleged a fraud against Cher Wang personally, and there is no evidence that Wang was defrauded.</u>

The government did not present any evidence that Cher Wang lost anything. She barely remembered the donations. The funds that HOCA Inc and HOCA LLC obtained came from S3 Graphics, Panda Networks, and Faith Hope and Love. While there is certainly evidence that those entities may be associated with Cher Wang, there was no evidence presented regarding Ms. Wang's interest in the entities and there was no evidence presented that those entities are alter egos of Ms. Wang. S3 Graphics, Panda Networks, and Faith Hope and Love are legally separate entities from Ms. Wang and those separate entities are the entities that provided the funds. There was no evidence that Cher Wang lost anything. In fact, Melody Chao testified that the loan from S3 Graphics could not have been extended without the approval of S3 Graphics' upper management, indicating S3 Graphics had a management structure separate from Cher Wang, personally. The government simply failed to present any evidence that there was a transfer of money or property from Ms. Wang to the Changs.

3. <u>The Changs may not be convicted of an alleged wire fraud against Ms. Wang because wire fraud requires a transfer of money or property from the victim to the perpetrator.</u>

The elements of mail fraud and wire fraud are: (1) a scheme to defraud; (2) an intended victim; (3) and a transfer of a traditionally recognized form of property.  In order to state a claim of fraud, the government must prove: (1) a victim; and (2) a scheme to defraud that particular victim; (3) of a traditionally recognized form of property.  See <u>Pasquantino v. United States</u>, 544 U.S. 349 (2005); <u>McNally v. United States</u>, 483 U.S. 350 (1987); <u>Carpenter v. United States</u>, 484 U.S. 19 (1987); <u>Cleveland v. United States</u>, 531 U.S. 12 (2000); <u>United States v. Milwitt</u>, 475 F.3d 1150 (9th Cir. 2007); <u>United States v. Lew</u>, 875 F.2d 219 (9th Cir. 1989).

"To charge a scheme to defraud under section 1341, <u>McNally</u> requires an allegation that [the defendant] intended to deprive the [victim] of money or property." <u>United States v. Mitchell</u>, 867 F.2d 1232, 1233 (9th Cir. 1989).

For a defendant to be convicted of fraud, his intent "must be to obtain money or property from the one who is deceived."  <u>United States v. Lew</u>, supra, 875 F.2d at 221; <u>United States v. Milwitt</u>, supra, 475 F.3d at 1156.  "This convergence of identity seems inherent in the idea of fraud as provided in the fraud statutes and defined by the Supreme Court in <u>McNally</u>." <u>Mylan Laboratories v. Akzo, N.V.</u>, 770 F.Supp.1053, 1073 (D.Md. 1991).

In <u>United States v. Lew</u>, the Ninth Circuit stated that the prosecution must show more than that the defendant sought to obtain money or property as a result of his scheme to defraud.  To fall within the prohibitions of the federal fraud statutes, the government must show that the deceived victim is the one who lost the property.  "[T]he intent must be to obtain money or property from the one who is deceived." 875 F.2d at 221.  In <u>Lew</u>, the government accused the defendant immigration attorney of mail fraud by obtaining money from his clients and then making false statements on their behalf to obtain government benefits.  <u>Id</u>. at 220.  The Ninth Circuit reversed the defendant's conviction, holding that because there was no evidence his clients were deceived by the false statements to the government, the prosecution had not proven "an intent to obtain money or property from the victim of the deceit." <u>Id</u>. at 221.

The Indictment here alleges that Jonathan and Grace Chang "engaged in a scheme to defraud C.W. and HOC4 by utilizing HOCA to solicit donations and short-term loans from C.W., as well as

1   obtain money and real property from C.W." Indictment at ¶ 9, Doc. No. 1. The Indictment does not
2   allege there were any other potential victims. The Indictment does not name CW's charitable
3   foundations or associated companies as victims.

4       The defense assumes that the government will attempt to rely upon United States v. Crawford,
5   239 F.3d 1086 (9th Cir. 2001), to avoid the wire fraud transfer requirement set out by the Supreme Court
6   and followed by the Ninth Circuit. Crawford did not, and could not, overrule Supreme Court and Ninth
7   Circuit authority that wire fraud requires a transfer of property, from the victim to the fraudster, and dealt
8   with a very different fact pattern than we have here.

9       In Crawford, the indictment specifically alleged the defendant stole a painting that "was in the
10  custody of UCLA, without the knowledge or permission of UCLA." Despite the defendant's admission
11  to stealing the painting by taking it from a UCLA storage room, and her admission that UCLA owned the
12  painting, the defendant claimed on appeal she could not be convicted because the government failed to
13  prove that UCLA actually owned the painting. Crawford, 239 F.3d at 1092. The Ninth Circuit affirmed
14  Crawford's conviction holding that under the facts there, the evidence demonstrated a knowing theft of
15  property, in the custody of UCLA, and that the defendant intended to deprive the owner of that property,
16  in the custody of UCLA, no matter who was the actual owner of the property. Id. Unlike the Indictment
17  here, which does not contain an allegation that funds in C.W.'s foundation are in the custody of C.W., in
18  Crawford, the indictment alleged a theft from UCLA by alleging that the painting "was in the custody of
19  UCLA." Id. at 1094.

20      Moreover, the majority opinion in Crawford did not discuss the issue of whether the
21  government's theory of conviction substantially broadened the indictment, but instead focused on
22  Crawford's failure to object to testimony that the painting may have been owned by an affiliated
23  organization rather than UCLA itself. If not for the defendant's failure to object to that testimony,
24  Crawford may well have been decided differently.

25      Here, we have objected loudly and vociferously to any evidence of a fraud against any entity
26  other than C.W. or HOC4 because any evidence of a fraud against other entities would describe a scheme
27  outside of the scheme alleged in the Indictment; and the government may not argue that a fraud against a
28  separate legal entity, a foundation or an entity somehow connected to Cher Wang, is the same as a fraud

1 against Cher Wang herself.

2 This case is more like <u>United States v. Milwitt</u>, 475 F.3d 1150, 1159 n.6 (9th Cir. 2007), in which
3 the Ninth Circuit distinguished <u>Crawford</u>.  <u>Milwitt</u> holds that while it may not be vital for the indictment
4 to specify a particular victim, the government may not attempt to prove a different scheme or victim from
5 that identified in the indictment. <u>Id</u>.  Here, the Indictment only alleges a scheme to defraud C.W. or
6 HOC4, and evidence of a scheme to defraud any other entity would be evidence of a scheme not charged
7 in the Indictment and violate the defendants' rights under the Fifth and Sixth Amendments.

8 Moreover, as indicated above, the government did not even try to submit any evidence that S3
9 Graphics, Panda Networks, or Faith Hope and Love were defrauded.  The government's proof was
10 limited to Cher Wang, and as discussed above, Cher Wang did not testify that she heard any false
11 statements or any misrepresentations, or that she lost anything.  She remembered making a donation, and
12 had a vague recollection that donation was made to HOCA, when she was asked:

13 Q.  IT SOUNDS LIKE YOU HAVE SOME RECOLLECTION OF A SEPARATE
14     ENTITY OWNING THE PROPERTY BUT IT'S FOR THE CHURCH TO USE FOR
15     THEIR ACTIVITIES.
16 A.   YES;

17 but she most emphatically did not testify that she was the victim of a fraud, that any misrepresentations
18 were made to her, or that she lost any of her property.  Accordingly there is not sufficient evidence to
19 support a claim that Cher Wang was defrauded by the Changs.

20 **C. The Government Did Not Prove A Fraud Against HOC4**

21 With regard to HOC4, the record in entirely blank. There is evidence that HOCA obtained funds
22 from HOC4, but there is no evidence that any false representation was made to obtain the funds.  No
23 representative from HOC4 even testified.  The evidence is that Jonathan Chang asked for the funds to be
24 sent to HOCA.  There is no evidence that he made any false statement or false representation to induce
25 that transfer.  Accordingly, there can be no conviction on a theory that HOC4 was somehow defrauded.

26 **D. There Is No Evidence To Support The Money Laundering Counts**

27 The money laundering allegations also fail because the money laundering allegations require that
28 the laundered funds be the proceeds of a crime.  Because there was no wire fraud, there were no criminal

proceeds.

IV. CONCLUSION

Because the government failed to produce sufficient to prove that Mr. Jonathan and Mrs. Grace Chang engaged in a scheme to defraud HOC 4 or Cher Wang, we respectfully request the Court grant this Rule 29 motion and enter a judgment of acquittal on all counts.

Dated: August 27, 2019                    Respectfully submitted,

                                          /s/
                                          Julia Jayne
                                          Christopher J. Cannon
                                          Matthew A. Laws
                                          Attorneys for Jonathan and Weilin Chang